UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAYLA HICKS,

    Plaintiff

v.

ALPHA OMICRON PI FRATERNITY, INC.
A Tennessee Non-Profit Corporation, and ALPHA
OMICRON PI PROPERTIES, INC., a
Tennessee Domestic Nonprofit Corporation,

    Defendants.

Case No.

Hon.

---

PENTIUK, COUVREUR & KOBILJAK, P.C.
By:   Kerry L. Morgan (P32645)
And:  Randall A. Pentiuk (P32556)
Attorneys for Plaintiff
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192-5267
Main: (734) 281-7100
(F) (734) 281-2524
KMorgan@pck-law.com
RPentiuk@pck-law.com

---

## VERIFIED COMPLAINT

NOW COMES Plaintiff, Kayla Hicks, by and through her attorneys, PENTIUK, COUVREUR & KOBILJAK, P.C., and for her Verified Complaint against Defendants ALPHA OMICRON PI FRATERNITY, INC. ("Defendant Alpha") and ALPHA OMICRON PI PROPERTIES, INC. ("Defendant Alpha Properties"), states as follows:

1

## GENERAL ALLEGATIONS

1. Plaintiff Kayla Hicks ("Hicks") is a natural person and was at all relevant times a resident of the City of East Lansing, County of Ingham, and State of Michigan.

2. Defendant Alpha, is a Non-Profit Tennessee corporation which operated a fraternity chapter commonly known as the Beta Gamma chapter within the City of East Lansing, County of Ingham, State of Michigan.

3. Defendant Alpha Properties, is a Domestic Non-Profit Tennessee Corporation and conducts business in the City of East Lansing, County of Ingham, State of Michigan.

### Jurisdiction and Venue

4. This case involves handicap discrimination in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* ("FHAA").

5. A "handicapped person" is defined broadly in the FHAA as one who has a physical or mental impairment, which substantially limits one or more of such person's major life activities, has a record of having such impairment, or is regarded as having such an impairment, pursuant to Section 802(h), 42 U.S.C. § 3602(h).

6. Discrimination is defined in the FHAA to include refusing "to make reasonable accommodations in rules, policies, practices, or services" when

necessary to afford such person with a handicap an "equal opportunity to use and enjoy a dwelling", pursuant to Section 804(f)(3), 42 U.S.C. § 3604(f)(3).

7. The FHAA also makes it unlawful to take adverse action or retaliate against any person for the reason that such person or persons have exercised any rights protected by this FHAA:

> "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected...."

Section 818, 42 U.S.C. § 3617.

8. The Court has jurisdiction of this action, pursuant to 42 U.S.C. §3613, and as a federal question arising under the laws of the United States, as well as pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

9. This Complaint also arises under the Michigan Persons with Disabilities Civil Rights Act, M.C.L. §§ 37.1501-37.1507 ("PWDCRA").

10. Plaintiff is entitled to the accommodation of her disabilities as a civil right, pursuant to Section 102 of the PWDCRA, MCL 37.1102(1).

11. The PWDCRA defines "disability" as including one or more of the following:

(i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

3

\* \* \*

 (D) … [S]ubstantially limits 1 or more of that individual's major life activities and is unrelated to the individual's ability to acquire, rent, or maintain property.

 (ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

 (iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

M.C.L. § 37.1103(d).

12. The PWDCRA defines "real estate transaction" as the "sale, exchange, rental, or lease of real property, or an interest therein."

13. "Real property" is defined in the PWDCRA to include, among other things, the "tenement" or "leasehold" of a building or structure.

14. The PWDCRA makes it unlawful to refuse to make reasonable accommodations as necessary to afford persons with a disability the equal opportunity to use the residential property:

 "(1) A person shall not do any of the following in connection with a real estate transaction: . . .

\* \* \*

 (b) Refuse to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person with a disability equal opportunity to use and enjoy residential real property."

M.C.L. § 37.1506a.

4

15. The PWDCRA also makes it unlawful to take adverse action or retaliate against any person for the reason that such person or persons have exercised any rights protected by this PWDCRA:

"A person or 2 or more persons shall not do the following:

\*   \*   \*

(f) Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by article 5."

M.C.L. § 37.1602(f).

16. The Court has pendent jurisdiction of Plaintiff's PWDCRA claim.

17. There are no administrative prerequisites under the FHAA and the PWDCRA to the filing of this action by Plaintiff.

18. Venue is appropriate, under 28 U.S.C. § 1391, since the substantial part of the events giving rise to this action occurred in this District, Defendants and Plaintiff reside or resided in this District, Defendants conduct business in this District, and the residential rental property that is the subject of this action is located in this District.

19. Plaintiff's disability is anxiety for which she has suffered from for several years, including panic attacks, preceding the events complained of.

20. At all relevant times, Plaintiff was a student at Michigan State University ("MSU") when she sought membership in Defendant Alpha's sorority Beta Gamma chapter.

21. Defendant Alpha approved Plaintiff's membership application to the sorority.

22. Plaintiff subsequently signed and entered into the Defendant Alpha's Housing Agreement of the Beta Gamma Chapter house located at the address commonly known as 333 Charles Street, East Lansing, Michigan 48823. (Exhibit 1).

23. Plaintiff moved into the Beta Gamma Chapter House in or around August 20, 2017, after Plaintiff provided the paperwork for her Emotional Support Animal ("ESA").

24. Preceding Plaintiff's membership in Defendant Alpha's fraternity, Plaintiff has long suffered a chronic anxiety condition.

25. Plaintiff's treating psychiatrist, Juliet Spelman, M.D., recommended that Plaintiff employ an ESA to assist her in coping with anxiety.

26. That Plaintiff selected a Netherland Dwarf Rabbit named Sebastian as her ESA.

27. That on July 19, 2017, veterinarian, David Mitzelfeldt, D.V.M., wrote a letter stating that Plaintiff's ESA Netherland Dwarf rabbit was healthy and social.

28. On August 16, 2017, Dr. Spelman completed the "Documentation of Disability And Accommodation Need" in support of Plaintiff's request for an ESA.

29. On August 19, 2017, Plaintiff submitted the "Emotional Support Animal (ESA) Owner Agreement" and the "Documentation of Disability And Accommodation Need" to Defendant's Director of Properties, Mandy Doyle.

30. On August 23, 2017, Mandy Doyle asked Plaintiff for "paperwork showing that your animal is registered as an ESA".

31. On August 23, 2017, Plaintiff registered Sebastian, a Netherland dwarf rabbit, as an ESA pet with the National Service Animal Registry.

32. The following day, August 24, 2017, Plaintiff provided Ms. Doyle with a copy of the National Service Animal Registry reflecting "Sebastian's" enrollment as an ESA pet.

33. On September 1, 2017, Defendants denied Plaintiff's accommodation requests in spite of her disability and timely compliance with all of Defendants' demands for supporting documents.

7

34. On or about September 6, 2017, Plaintiff contacted the Fair Housing Center of Metropolitan Detroit, a private organization that has worked to help assure equal housing opportunities throughout the metropolitan Detroit area, regarding Defendants' failure to accommodate and retaliation.

35. On September 8, 2017, Plaintiff filed a Complaint with the Michigan Department of Civil Rights against Defendant alleging discrimination against her on the grounds of her disability and the failure to accommodate same.

36. On or about September 19, 2017, Plaintiff filed a Complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* ("FHAA").

37. Plaintiff brought the ESA animal to the sorority house prior to and for Plaintiff's birthday on November 29, 2017, with approval from the house manager, but was soon told by the house manager that the animal was not permitted.

38. Plaintiff moved the ESA into the sorority house, however, before Plaintiff left for Spring Break on or about March 1, 2018, the House Manager told Plaintiff that she could not bring the ESA to the sorority house because headquarters had not approved the ESA.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

39. On or about March 11, 2018, after Spring Break, Defendant's agent, the house manager or other agent, told Plaintiff that if the ESA was re-introduced into the sorority house, an eviction process would begin and Plaintiff would be evicted.

40. On March 13, 2018, Defendant Kendra Fuller told Plaintiff that Plaintiff was required to attend a "standards" meeting, a reference to a disciplinary type of proceeding found in the sorority policies. However, when Plaintiff informed Fuller on March 14, 2018, that the rabbit was being moved out of the sorority house over her objections, Fuller then advised Plaintiff that her attendance at the Standards meeting was no longer necessary.

41. Confronted by Defendants' retaliatory acts, Plaintiff was forced to move out of the Defendant Alpha's sorority house.

42. Plaintiff's damages include, but are not limited to:

   a. Out of pocket costs necessitated by the impending eviction which required Plaintiff to lease alternative housing and associated moving expenses.
   b. Emotional distress, outrage and embarrassment, humiliation, anxiety; denial of her civil rights; and pain and suffering.
   c. Emotional turmoil adversely affecting Plaintiff's academic performance.
   d. These emotional distress injuries and damages include, but are not limited to, the loss of the peaceful and quiet enjoyment of the fraternity housing, and the denial of the privileges and opportunities that arise from said housing as were enjoyed by non-disabled tenants.

9

## COUNT I

## VIOLATION OF THE FHAA

43. Plaintiff re-alleges paragraphs 1 through 42 herein in full.

44. Plaintiff Hicks is a handicapped individual, or was at all relevant times, regarded as having a handicap and therefore was entitled to protection under the FHAA.

45. Defendants violated the FHAA, by refusing and continuing to refuse to make a reasonable accommodation for Plaintiff in the rules, policies, practices or services concerning an emotional assistance animal.

46. Defendants have violated the FHAA by retaliating against Plaintiff when she exercised her rights under the FHAA.

47. As a result of Defendants' violations of the FHAA, Plaintiff suffered the injuries and damages as alleged above.

## COUNT II

## VIOLATION OF THE PWDCRA

48. Plaintiff re-alleges paragraphs 1 through 47 herein in full.

49. Plaintiff was at all relevant times disabled or was regarded as having a disability and therefore entitled to protection under the PWDCRA.

50. Defendants violated the PWDCRA, by refusing to make a reasonable accommodation for Plaintiff in the rules, policies, practices or services concerning an emotional assistance animal.

51. Defendants violated the PWDCRA by retaliating against Plaintiff when she exercised her rights under the PWDCRA, including a threatened eviction.

52. As a result of Defendants' violations of the PWDCRA, Plaintiff suffered injuries and damages as set forth above.

WHEREFORE, for all of the above reasons, Plaintiff respectfully requests that the Court grant the following relief against Defendants:

(A) Temporarily, preliminarily and permanently enjoin Defendants, and all officers, directors, employees, attorneys, agents, and assigns of Defendants, from any other acts or practices of handicap discrimination against other occupants or guests in the ownership, operation and management of their rental properties;

(B) Award actual and compensatory damages to compensate Plaintiff for economic losses and damages, personal injuries, pain and suffering, and noneconomic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by the Defendants' violations of the FHAA and PWDCRA, in an amount to be proven at trial;

(C) Grant Plaintiff an award of punitive and/or exemplary damages under the FHAA as a result of Defendants' deliberate, intentional, willful and flagrant handicap discrimination, in an amount that reflects the dual purposes of punishment and deterrence;

(D) Grant Plaintiff an award of attorney fees, costs and interest incurred in bringing this action;

(E) Grant Plaintiff pre-judgment and post judgment on all awards rendered against Defendants; and

(F) Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

## VERIFICATION

I verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge and belief.

Executed this 5th day of ~~October~~ November, 2018.

_____
Kayla Hicks

Respectfully submitted,
**PENTIUK, COUVREUR & KOBILJAK, P.C.**

By: /s/ Kerry L. Morgan
Kerry L. Morgan (P32645)
Randall A. Pentiuk (P32556)
Attorneys for Plaintiff
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Phone: (734) 281-7100
Fax: (734) 281-2524
KMorgan@pck-law.com
RPentiuk@pck-law.com

Dated: November 5, 2018.

## JURY DEMAND

Plaintiff Kayla Hicks, by her and through her attorneys, Pentiuk, Couvreur and Kobijlak, P.C., demands a jury trial as to all issues in her Verified Complaint.

Respectfully submitted,
**PENTIUK, COUVREUR & KOBILJAK, P.C.**

By: /s/ Kerry L. Morgan
Kerry L. Morgan (P32645)
Randall A. Pentiuk (P32556)
Attorneys for Plaintiff
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Phone: (734) 281-7100
Fax: (734) 281-2524
KMorgan@pck-law.com
RPentiuk@pck-law.com

Dated: November 5, 2018.

Z:\2-G-L Clients\Hicks Kayla\Pleadings\Complaint 10.15.2018 Hicks notes.docx